ANTONETTE RAMON PHILLIPS,

    Plaintiff,

v.

TIMOTHY WARD, et al.,

    Defendants.

CIVIL ACTION NO.: 5:19-cv-105

FILED
Scott L. Poff, Clerk
United States District Court

By CAsbell at 9:23 am, Mar 25, 2020

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff filed this action, asserting claims under 42 U.S.C. § 1983. Doc. 1. This matter is before the Court for a frivolity screening under 28 U.S.C. § 1915A. For the reasons stated below, I **RECOMMEND** the Court **DISMISS** Plaintiff's deliberate indifference claims against Defendants Ward, Sauls, Lewis, Upton, Webb, Stone, Williams, Stewart, and Davis in their individual and official capacities and against Wellpath, LLC. I also **RECOMMEND** the Court **DENY** Plaintiff's claim for injunctive relief. However, I **FIND** that some of Plaintiff's claims may proceed. Specifically, the Court directs service, by separate Order, of Plaintiff's deliberate indifference to serious medical needs against Dr. Augustin and John/Jane Does #1–3.

## PLAINTIFF'S CLAIMS[1]

Plaintiff asserts claims of deliberate indifference to his serious medical needs by Timothy Ward, the Commissioner of the Georgia Department of Corrections ("GDOC"); Randy Sauls, the Assistant Commissioner of the GDOC, Health Services Division; Dr. Sharon Lewis, the Director

---

[1] All allegations set forth here are taken from Plaintiff's Complaint and accompanying attachment, Exhibit "A". Docs. 1, 1-1. During frivolity review under 28 U.S.C. § 1915A, "[t]he complaint's factual allegations must be accepted as true." Waldman v. Conway, 871 F.3d 1283, 1289 (11th Cir. 2017).

of Medical for the GDOC; Steve Upton, the Warden at Coffee Correctional Facility ("CCF"); FNU Webb, Assistant Warden of Operations at CCF; Ricky Stone, Assistant Warden of Care and Treatment at CCF; FNU Williams, Chief of Unit Management at CCF; D. Stewart, Health Services Administrator at CCF; Dr. Augustin, former on-site medical doctor employed at CCF; Wellpath, LLC, the medical provider contracted by CoreCivic to provide medical care to inmates at CCF; John/Jane Does #1–3, RNs or LPNs employed as nurses at CCF; and Lynn Davis, Grievance Coordinator at CCF.  Doc. 1-1 at 3–7.

Plaintiff injured his right pinky finger on April 5, 2019, while playing basketball during recreation call at CCF.  Doc. 1-1 at 8.  Due to the pain, Plaintiff requested immediate medical attention and was escorted to the medical ward where a P.A. informed him his right pinky finger could be broken or dislocated.  Id.  The P.A. said Plaintiff should go to the emergency room; however, after the P.A. consulted with Dr. Augustin, it was decided Plaintiff would not go to the emergency room but would instead have an x-ray exam the following Monday, three days later. Id.  The x-ray revealed Plaintiff's finger was dislocated.  Id.  Dr. Augustin "briefly examined" Plaintiff's finger and told Plaintiff he would be sent to an orthopedic doctor.  Id.  Two days after the x-ray, during a dressing change where a P.A. rewrapped Plaintiff's dislocated finger, Dr. Augustin reaffirmed the decision to have Plaintiff's finger treated by an orthopedic doctor.  Id. at 9.

On April 12, 2019, a week after injuring his finger, Plaintiff was brought to an emergency room in Waycross, Georgia, where another x-ray confirmed his right pinky finger was dislocated.  Id.  The E.R. doctor "relocated" Plaintiff's finger.  Id.  In the following days, Plaintiff went to have his injured finger re-wrapped each day but was turned away (presumably by the unnamed nurse Defendants).  Id.  Rather, five days after his finger was "relocated," Dr.

Augustin gave Plaintiff a tongue suppressor, gauze, and tape to wrap his finger himself. Id. at 10. The next day, Plaintiff appeared at call-out for an x-ray to see whether his finger had become dislocated again, but the attending nurse, who is unknown, denied Plaintiff's appointment. Id. The following day at call-out, a P.A. confirmed Plaintiff had an appointment the prior day to have an x-ray. Id.

Ten days later, Plaintiff went to an outside appointment at an orthopedic office, which confirmed Plaintiff's right pinky finger had been reset. Id. However, at this appointment, Plaintiff reported to the outside doctor that he could no longer bend his right pinky finger and asked whether he would be able to resume full use of it. Id. at 10–11. The outside doctor told Plaintiff that, due to the length of time between the dislocation and resetting of his finger, the "resulting stretching of the affected ligaments created a strong possibility that it would remain in a 'crooked' position permanently, unless proper physical therapy was provided to Plaintiff." Id. at 11. In a follow-up appointment with Dr. Augustin on May 6, 2019, Plaintiff asked Dr. Augustin whether his finger would be in its current condition had he been brought to the E.R. the day he was injured. Id. Dr. Augustin responded that Plaintiff was sent to the emergency room as soon as the doctor was aware of Plaintiff's injury, once the x-ray showed his finger was dislocated, which Plaintiff contends is untrue. Id. at 11–12. Plaintiff asserts, although Dr. Augustin put in an order for Plaintiff to receive physical therapy, he has never been scheduled to receive physical therapy, and CCF does not offer physical therapy. Id. at 12. Plaintiff's finger continues to cause him pain and remains crooked and unable to stretch out of its normal position. Id.

**STANDARD OF REVIEW**

A federal court is required to conduct an initial screening of all complaints filed by prisoners and plaintiffs proceeding *in forma pauperis*. 28 U.S.C. §§ 1915A(a), 1915(a). During the initial screening, the court must identify any cognizable claims in the complaint. 28 U.S.C. § 1915A(b). Additionally, the court must dismiss the complaint (or any portion of the complaint) that is frivolous, malicious, fails to state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune from such relief. Id. The pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993).

A claim is frivolous under § 1915(e)(2)(B)(i) if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)). In order to state a claim upon which relief may be granted, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To state a claim, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555.

**DISCUSSION**

**I.     Claims for Monetary Damages Against Defendants in Their Official Capacities**

Plaintiff sues all Defendants, but for Wellpath, LLC and the Doe Defendants, in both their individual and official capacities. Doc. 1-1 at 3–7. However, Plaintiff cannot sustain a

§ 1983 claim for monetary damages against Defendants in their official capacities. States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–13 (1999). Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under 1983. Id. at 71. Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as employees and officers of the Georgia Department of Corrections. Accordingly, the Eleventh Amendment immunizes these actors from suit for monetary damages in their official capacities. See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims for monetary damages against Defendants in their official capacities. Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Therefore, the Court should **DISMISS** Plaintiff's § 1983 claims for monetary relief against Defendants in their official capacities.

## II.    Supervisory Liability Claims

Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of respondeat superior. Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's

constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011). Plaintiff wishes to hold multiple Defendants—including Defendants Ward, Sauls, Lewis, Upton, Webb, Stone, Williams, and Stewart—liable based solely on their supervisory positions at CCF and the GDOC. Plaintiff does not make any factual allegations that any of these Defendants directly participated in or were otherwise causally connected to the alleged deprivations of his constitutional rights. As set forth above, such supervisory allegations are an insufficient basis for § 1983 liability. For these reasons, the Court should **DISMISS** all claims against Defendants Ward, Sauls, Lewis, Upton, Webb, Stone, Williams, and Stewart.

### III. Allegations of Subjective, Deliberate Indifference to a Serious Medical Need

To establish that a defendant violated his Eighth Amendment rights, a prisoner must prove three elements: (1) an objectively serious medical need; (2) a defendant's subjective, deliberate indifference to that need; and (3) an injury caused by the defendant's indifference. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). However, Plaintiff alleges no facts supporting these elements against Defendants Ward, Sauls, Lewis, Upton, Webb, Stone, Williams, Stewart, Wellpath, LLC, and Davis. As described above, Plaintiff makes no allegation that any of these Defendants were aware of his alleged serious medical need, much less that any of these Defendants' deliberate indifference caused his injury. The only Defendants Plaintiff plausibly connects to his deliberate indifference claim are Dr. Augustin and the Doe Defendants. Even under the standard of review at this early stage, these allegations cannot survive. Accordingly, the Court should **DISMISS** Plaintiff's claims against Defendants Wellpath, LLC,

and Davis. The foregoing reasons also apply to the aforementioned supervisory Defendants, i.e., Defendants Ward, Sauls, Lewis, Upton, Webb, Stone, Williams, and Stewart.

**IV.     Claim for Preliminary Injunctive Relief**

Plaintiff also requests "immediate" injunctive relief from the Court to "force [Defendants] to take him to an orthopedist so he can be evaluated and treated, and a plan of physical therapy established." Doc. 1-1 at 1, 27. To be entitled to a preliminary injunction, the movant must show: (1) a substantial likelihood of ultimate success on the merits; (2) an injunction or protective order is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the injunction or protective order would inflict on the non-movant; and (4) the injunction or protective order would not be adverse to the public interest. Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225–26 (11th Cir. 2005). In this Circuit, an "injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four requisites." Horton v. City of Augustine, 272 F.3d 1318, 1326 (11th Cir. 2001). Accordingly, where there is a constitutional violation in the prison context, courts traditionally are reluctant to interfere with prison administration and discipline, unless there is a clear abuse of discretion. See Procunier v. Martinez, 416 U.S. 396, 404–05 (1974) ("Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration [because] . . . courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform."), *overruled on other grounds by* Thornburgh v. Abbott, 490 U.S. 401 (1989). In such cases, "[d]eference to prison authorities is especially appropriate." Newman v. Alabama, 683 F.2d 1312, 1320–21 (11th Cir. 1982) (reversing district court's injunction requiring release of prisoners on probation because it "involved the court in

the operation of the State's system of criminal justice to a greater extent than necessary" and less intrusive equitable remedy was available).

Plaintiff has failed to make a sufficient showing entitling him to the extraordinary remedy of a preliminary injunction. Specifically, he has failed to show that he has a substantial likelihood of ultimate success on the merits of his claims. Accordingly, the Court should **DENY** Plaintiff's request for a preliminary injunction. This is not to say that Plaintiff will not be able to ultimately obtain injunctive relief in this case. However, he is not entitled to such relief at this time.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** the Court **DISMISS** Plaintiff's claims against Defendants Ward, Sauls, Lewis, Upton, Webb, Stone, Williams, Stewart, Wellpath, LLC, and Davis in their individual and official capacities and **DENY** Plaintiff's claims for injunctive relief.

Any party seeking to object to this Report and Recommendation is instructed to file specific written objections within 14 days of the date on which this Report and Recommendation is entered. See 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Furthermore, it is not necessary for a party to repeat legal arguments in objections. The parties are advised that failure to timely file objections will result in the waiver of rights on

appeal. 11th Cir. R. 3-1; see Symonette v. V.A. Leasing Corp., 648 F. App'x 787, 790 (11th Cir. 2016); Mitchell v. United States, 612 F. App'x 542, 545 (11th Cir. 2015).

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 25th day of March, 2020.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA